UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID K. WILLIAMS, as Estate
Representative of GUS WILLIAMS and
Guardian for ROSANNA WILLIAMS,

                              *Plaintiff,*                         No. 25-CV-6753 (KMK)

          v.                                                      ORDER

TD BANK, N.A., *et al.*,

                              *Defendants.*

KENNETH M. KARAS, United States District Judge:

David K. Williams ("Plaintiff") brings this Action, assertedly on behalf of the estate of

Gus Williams and as guardian of Rosanna Williams, against T.D. Bank, N.A. ("the Bank"),

Kevin Taylor, and Derek Killam[1] (collectively, "Defendants"), seeking $1,000,000,000 in

monetary damages, treble damages, injunctive relief, reimbursement of litigation expenses, and

other relief.  (Compl. 1, 14 (Dkt. No. 1).)[2]  Before the Court is Plaintiff's motion requesting

emergency relief (the "Motion").  (*See* Enhanced Emergency Mot. for Criminal Prosecution

("Pl.'s Mot.") (Dkt. No. 14).)  For the reasons explained herein, Plaintiff's request is denied.

---

[1] Derek Killam was originally sued in this case as Derek K.; Plaintiff says that he has identified this individual as Derek Killam, a Customer Experience Officer at the Bank. (Emergency Mot. for Expedited Relief ("Sept. 8 Em. Mot.") 3 (Dkt. No. 8).)
[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

I. Background

A. Factual Background

Plaintiff's Complaint arises out of events concerning a safe deposit box at the Bank. (Compl. 6–7.)[3] According to an agency response letter submitted by the Bank, Plaintiff's mother, Rosanna Williams, leased the safe deposit box on September 21, 2015; Plaintiff's brother, Gus Williams, was added as a co-lessee on November 19, 2015. (Stewart Decl. in Opp'n to Mot. ("Defs.' Decl.") Ex. B ("Agency Response") 2–3 (ECF No. 22-3).)

Beginning in 2018, the co-lessees stopped paying the rental fee for the safe deposit box. (*Id.* at 3.) As of November 22, 2019, payments on the safe deposit box had been delinquent for over one year. (*Id.*) The account under which the safe deposit box was leased was declared delinquent. (*Id.*) The Bank says that it sent a letter to Rosanna and Gus Williams at their last known address; that letter advised that rent on the box was past due and explained that the Bank would drill the box if the rent was not paid within 30 days. (*Id.*) It also attaches a letter dated May 22, 2023, notifying Rosanna and Gus Williams that absent payment, the contents of the safe deposit box would be transferred to the State. (*Id.* at 5.)

According to Plaintiff, the Bank drilled the safety deposit box and emptied it of its contents on January 29, 2020. (Compl. at 4, 6; *see also* Agency Response at 3.) The box

---

[3] The facts laid out here are drawn from the entirety of the factual materials before the Court, given that "[i]n considering a motion for a preliminary injunction, the Court may rely on affidavits, depositions, sworn testimony, and hearsay evidence." *UBS Sec. LLC v. Leitner*, No. 17-CV-1365, 2017 WL 5054739, at *1 n.1 (S.D.N.Y. May 12, 2017) (citing *Mullins v. City of N.Y.*, 626 F.3d 47, 52 (2d Cir. 2010)); *see also City of N.Y. v. Lopez*, No. 21-CV-7862, 2025 WL 1638033, at *1 (S.D.N.Y. June 10, 2025). The Court "need not," however, "accept as true" for the purposes of deciding a motion seeking emergency relief "factual allegations that are unsupported by reliable, admissible evidence." *A.H. by & through Hester v. French*, 511 F. Supp. 3d 482, 493 n.2 (D. Vt. 2021) (citing *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)).

purportedly contained NBA Championship rings from the 1979 Seattle SuperSonics as well as jewelry, "burial papers" belonging to Rosanna Williams, and other valuable items.  (Compl. at 6, 10; Mot. for Summary Judgment ("MSJ") 2, 9 (Dkt. No. 4).)[4]  The box's contents were purportedly sold at auction for approximately $1,500–$2,000.  (Compl. at 6, 10; MSJ at 9.)

Plaintiff claims that in 2021, in a South Carolina Probate Court proceeding, he was appointed estate administrator for Gus Williams.[5]  (Compl. at 2–3.)  In the South Carolina case, he represents, he and Lisa Williams were qualified co-guardians, and given the "full authority to provide for the care, custody, supervision, health and medical needs" of Gus Williams.  (Id.)  He asserts that the court in that case further ordered "access to any of Gus Williams's financial account(s) and all of the property of Gus Williams . . . to the Conservators . . . ."[6]  (Id.)  Plaintiff claims that he "could act as sole guardian with full authority" for his deceased brother, and that this guardianship was not due to expire until his brother's death.  (Id. at 4.)  He further explains

---

[4] Again, given that Plaintiff proceeds *pro se*, the Court is under an obligation to construe his materials generously to raise the strongest arguments they suggest.  *See Gawlik v. Reis*, No. 23-CV-1194, 2025 WL 744270, at *6 (D. Conn. Mar. 7, 2025) ("[I]t is well-settled that pleadings of self-represented litigants must be construed generously." (citation omitted)).  Accordingly, here and throughout this Order, the Court considers the "allegations contained in [Plaintiff's] other court filings" to the extent relevant to his Motion.  *Hinds v. Pathmark Stores, Inc.*, No. 04-CV-3722, 2005 WL 1606366, at *1 (E.D.N.Y. June 2, 2005) (citation and quotation marks omitted).

[5] Plaintiff further asserts that a New York State Supreme Court Justice recognized this authority, but the Court has been unable to find the cited case, and Plaintiff did not attach the decision to his filing, despite purporting to do so.  (*See* MSJ at 2.)

[6] Despite having omitted the South Carolina Probate Court decision from his initial filings, Plaintiff attached it to a later submission.  (Letter from Plaintiff to Court (October 20, 2025), Ex. 1 at 37 (Dkt. No. 35-1).)  The Court notes that the filed copy appears to be missing page four.  (Id. at 39–40.)  Nevertheless, it provides, in relevant part, that Gus Williams was put under "full permanent guardianship and permanent conservatorship" and that David K. Williams and Lisa Williams would be the appointed co-guardians of Gus Williams.  (Id. at 43–44.)  The document explains that under South Carolina law each co-guardian has the authority to act independently.  (Id. at 44 (citing S.C. Code Ann. §§ 62-5-304(C), 62-5-422(A)).)

that he was appointed estate administrator for his brother's estate at an unspecified time and via an unspecified procedure in Maryland. (*Id.* at 2.) He also represents that he serves as "[g]uardian and [a]dvocate" for his centenarian mother, Rosanna Williams. (*Id.* at 2.)

In 2021, after his appointment as guardian, Plaintiff says that he brought the guardianship and conservatorship paperwork to TD Bank. (Pl.'s Opp'n to Defs.' Req. for Pre-Mot. Conference 2–3 (Dkt. No. 58).) There, he met with a manager who "accepted [his guardianship] paperwork and promised [him] access." (*Id.* at 3.) He represents that TD Bank's upper management "realized they had committed a crime in 2020" in light of their drilling "while [Plaintiff] had court-ordered authority." (*Id.*) He says that, from 2021 to 2025, four separate managers gave unsatisfactory responses to his inquiries. (*Id.*) At some point during his communications with the Bank, Plaintiff interacted with a TD Bank employee named Kevin Taylor who, he says, did not respond to repeated settlement demands, and an employee named Derek Killam, who he contends was engaged in criminal activity related to his mother and brother's account. (Compl. at 5, 9.)

According to Plaintiff, Gus Williams, who had then suffered a stroke, died on January 15, 2025, as the result of "[i]nadequate medical care." (*Id.* at 2, 10–11.) He could not "afford proper treatment" because he lacked "medical care funds." (*Id.* at 10.) Plaintiff asserts that his brother lacked these funds due to the Bank's decision to empty the safe deposit box. (*Id.* at 10.) Plaintiff further alleges that Rosanna Williams "needs [the] burial papers" that were stored at the Bank. (*Id.* (emphasis omitted)) It appears Plaintiff also attempted to access his brother's accounts at TD Bank, and was told by TD employees that they could not access the joint account. (*Id.* at 6.)

Plaintiff represents that he sent a settlement demand dated July 9, 2025 to the Bank. (MSJ at 8.) He then followed up with further demands for settlement. (*See id.* at 9, 12.)

B. Procedural History

Plaintiff filed this Action on August 15, 2025.  (*See* Compl.)  The Complaint identifies eight causes of action under federal law: (1) RICO, 18 U.S.C. § 1961; (2) elder abuse under unspecified federal statutes; (3) obstruction of justice, 18 U.S.C. § 1512; (5) mail fraud, 18 U.S.C. § 1341; (6) money laundering, 18 U.S.C. § 1956; (7) unspecified bank law violations in Part 12 of the United States Code; and (8) unspecified consumer protection violations from Part 15 of the United States Code.  (Compl. at 13–14; Pl.'s Mot. at 2).  The Complaint also identifies eight state law claims.  (Compl. at 14.)

Shortly after he initiated the case, Plaintiff filed two Emergency Motions for Expedited Relief, (*see* Emergency Mot. for Expedited Relief (Dkt. No. 6); Sept. 8 Em. Mot.), and a Motion for Summary Judgment, (*see* MSJ).  Plaintiff also filed a letter directed to the Consumer Financial Protection Bureau ("CFPB") alleging that, after this Case was initiated, TD Bank closed its branch in Mount Laurel, New Jersey, where defendants Kevin Taylor and Derek Killam had worked.  (Letter from Plaintiff to CFPB (September 3, 2025) 3 (Dkt. No. 5).)  In that letter, Plaintiff asserts that the closure was a bid to avoid service of process in this lawsuit.  (*Id.*)

It appears that Plaintiff has made further attempts to contact the CFPB and other agencies regarding TD Bank's handling of the safe deposit box.  (*See generally* Defs.' Decl. Ex. A (Dkt. No. 22-1).)  In a letter dated August 29, 2025, David Killam reportedly contacted Plaintiff regarding two of his complaints with the CFPB, explaining that as the "matter is currently under active litigation" Plaintiff should "engage [his] legal counsel accordingly."  (*Id.* at 7.)  It appears that Killam sent a similar letter on September 3, 2025.  (*See* Pl.'s Mot. at 5.)

Plaintiff has filed various other documents purporting to supplement his filings and Complaint, or otherwise to request criminal prosecution of the Defendants.  (*E.g.* Letter from

Plaintiff to Court and CFPB (September 9, 2025) ("Pl.'s Sept. 9 Letter") (Dkt. No. 9); Demand

for Immediate FBI Prosecution (Dkt. No. 12); Letter from Plaintiff to Court and CFPB

(September 15, 2025) (Dkt. No. 15).)  He has also asserted that various documents sent by TD

Bank constitute admissions of liability or settlement offers.  (MSJ at 3; Pl.'s Sept. 9 Letter at 3

(asserting that various materials were admissions of guilt).)  On September 10, 2025, the Court

denied without prejudice several of Plaintiff's requests for emergency relief, as well as Plaintiff's

Motion for Summary Judgment, citing Plaintiff's failure to serve Defendants.  (Mem.

Endorsement (September 10, 2025) 5 (Dkt. No. 13).)

On September 11, 2025, Plaintiff filed another emergency motion.  (Pl.'s Mot.)  In this

Motion, he requested that the Court refer the case for criminal prosecution and otherwise

coordinate with investigative entities, "[r]ecognize systematic criminal enterprise requiring

enhanced penalty provisions," "[g]rant emergency consideration of coordinated federal

obstruction crimes; and "[o]rder immediate cessation of systematic federal agency obstruction."

(*Id.* at 3.)  The Court ordered Defendants to respond to the Motion by September 26, 2025, and

the Bank did so.  (Mem. Endorsement (September 17, 2025) 3 (Dkt. No. 16); Mem. of Law in

Opp'n (Dkt. No. 21).)[7]  As the proceedings continued, Plaintiff filed additional documents, some

of which requested further equitable relief.  (Pl.'s Objection to Def.'s Req. for Extension 2 (Dkt.

No. 28); Pl.'s Resp. to TD Bank 4 (Dkt. No. 32) (asking the Court to "[r]efer perjury violations

to appropriate criminal authorities for prosecution").)

---

[7] On September 29, 2025, Plaintiff moved this Court to hold Defendant TD Bank in contempt and enter a default judgment against it for failure to comply with this deadline.  (*See generally* Pl.'s Mot. for Contempt (Dkt. No. 24).)  However, TD Bank appears to have complied with the deadline, as it filed its Memorandum of Law in Opposition to Plaintiff's Motion on September 26, 2025.  (*See* Mem. of Law in Opp'n.)  Accordingly, Plaintiff's September 29, 2025 motion is denied.

Plaintiff appears to assert that Derek Killam and Kevin Taylor were served on August 25, 2025, via personal service on "Legal Admin" Rachel Kaminski.[8]  (Pl.'s Sept. 9 Letter at 12–13.) He attaches certificates of service to one of his letter filings.  (*Id.*)  Plaintiff asserts that his Motion was "served upon all parties of record," though he does not describe a method of service. (Pl.'s Mot. at 3.)  After further service difficulties, Plaintiff successfully served the Bank on October 28, 2025.  (Affidavit of Service (Dkt. No. 49).)

## II.  Discussion

### A.  Standing

#### 1.  Standard of Review

Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Id.*; *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing." (quotation marks and citation omitted)); *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority

---

[8] Although the individual Defendants have not appeared, "[a] process server's sworn statement of service creates a presumption that service has been effectuated." *De Curtis v. Ferrandina*, 529 F. App'x 85, 85–86 (2d Cir. 2013) (summary order).  The materials filed by Plaintiff appear to contain such sworn statements, averring that service was executed on an individual authorized to accept service, and thus seem to satisfy Federal Rule of Civil Procedure 4(e).  (Pl.'s Sept. 9 Letter at 12–13.)

of a federal court to exercise jurisdiction." (citation omitted)).  "Constitutional standing refers to the requirement that parties suing in federal court establish that a 'Case' or 'Controversy' exists within the meaning of Article III of the United States Constitution."  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016).  Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

As the Second Circuit recently explained, "[t]ypically, a plaintiff will have standing only to 'assert his or her own legal rights and interests' and may not 'rest a claim to relief on the legal rights or interests' of others."  *Doe v. Hochul*, 139 F.4th 165, 177 (2d Cir. 2025) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).  Nevertheless, there are "several narrow exceptions" to this rule.  *Id.*  One is the possibility of "permit[ting] another to prosecute the[] claims" of "a minor or other incompetent person . . . in a representative capacity."  *Id.*  "Normally, that duty . . . fall[s] on the minor or incompetent party's legal guardian."  *Id.*  Accordingly, Federal Rule of Civil Procedure 17 states that "a general guardian" "may sue or defend on behalf of a minor or an incompetent person."  Fed. R. Civ. P. 17(c)(1).  So too, Rule 17 provides that "an executor," "an administrator," or "a guardian," *inter alios*, may "sue in their own names without joining the person for whose benefit the action is brought."  Fed. R. Civ. P. 17(a)(1).

As to the showing that a party must make to demonstrate that it is entitled to emergency relief, "[t]he standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 . . . are identical."  *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.

8

Supp. 3d 457, 469 (S.D.N.Y. 2020) (quotation marks omitted); *accord Widakuswara v. Lake*, 773 F. Supp. 3d 46, 53 (S.D.N.Y. 2025); *see also Rosa v. Pathstone Corp.*, No. 23-CV-1071, 2023 WL 6813100, at *2 (S.D.N.Y. Oct. 13, 2023).

> A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Benihana, Inc. v. Benihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration and quotation marks omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) ("A preliminary injunction is an extraordinary and drastic remedy[.]" (citation omitted)); *Crocs, Inc. v. Jinjiang Hobibear Shoes & Clothing Co.*, No. 25-CV-180, 2025 WL 1519114, at *1 (S.D.N.Y. May 28, 2025) ("A temporary restraining order . . . is an extraordinary remedy never awarded as of right." (internal quotation marks and citation omitted)). "The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." *Empire Trust, LLC v. Cellura*, No. 24-CV-859, 2024 WL 1216729, at *2 (S.D.N.Y. Mar. 21, 2024) (citation and quotation marks omitted); *see also Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) ("The purpose of a temporary restraining order is to preserve an existing situation in statu quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." (citation omitted)); *Goldstein v. Hochul*, No. 22-CV-8300, 2022 WL 20305832, at *1 (S.D.N.Y. Oct. 3, 2022) (same).

2.  Analysis

The Court's analysis here "begin[s]—and end[s]—with standing." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024).  "At this stage," Plaintiff has not "established standing to seek an injunction against any [D]efendant" on behalf of either his mother or his brother.  *Id.* Accordingly, his claims are not likely to succeed on the merits.

First and foremost, based on the allegations in his own Complaint, Plaintiff's guardianship authority expired after his brother's death.  (Compl. at 4 ("Guardianship NEVER expires until death.").)  It is therefore unclear how Plaintiff would have the authority to assert claims on his brother's behalf.  To the extent that he is asserting authority to act as estate executor or administrator based on the purported Maryland proceedings, he has not presented specific allegations that would establish that he has any authority to litigate on behalf of the estate or otherwise explained what authority these proceedings conferred on him.  (*See* Compl. at 2 (asserting, without including the relevant language, decision, or citing to a specific case number, that Plaintiff is "Estate Administrator" and therefore has "Authority" for "All claims, assets, and legal actions for deceased Gus Williams").)

The Court further notes that, although the Bank has not raised this issue, it seems probable that Plaintiff cannot represent either his mother or his brother's estate pro se.  "[A] non-attorney administrator or executor of an estate may not proceed pro se in litigating an interest specific to the estate where the estate has beneficiaries or creditors other than the representative." *Purcell v. City of New York*, No. 18-CV-3979, 2018 WL 3733941, at *2 (E.D.N.Y. Aug. 6, 2018) (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)).  An administrator may appear *pro se* on the behalf of an estate only "where the administrator of the estate is also its sole beneficiary *and* where the estate has no creditors."  *Id.* (citing *Guest v. Hansen*, 603 F.3d 15, 21

10

(2d Cir. 2010)).  In order to litigate on behalf of his brother's estate, Plaintiff must present materials that would allow the Court to conclude that those circumstances are satisfied here.  *See id.* ("[I]n order to proceed pro se on behalf of [her son's] estate, Plaintiff must demonstrate that she is the sole beneficiary of the estate and that no creditors have any claims on the estate. Alternatively, Plaintiff may seek counsel to proceed on behalf of the estate." (footnote omitted)); *see also DBY v. Rantab Enters. Inc.*, No. 24-CV-0528, 2024 WL 756586, at *2 (S.D.N.Y. Feb. 23, 2024) (explaining "[w]here . . . there are multiple survivors to a deceased's estate . . . claims cannot be asserted by any of those survivors (collectively or individually) on behalf of that estate *pro se*" and "dismiss[ing] . . . claims that [Plaintiffs] assert on behalf of the estate . . . *pro se* without prejudice to such claims being reasserted . . . by an attorney representing that estate"), *aff'd sub nom. Corley v. Rantab Enters. Inc.*, No. 25-84-CV, 2025 WL 2741735 (2d Cir. Sept. 26, 2025) (summary order).  He has not done so.

The same issue arises with the claims Plaintiff attempts to bring on his mother's behalf. In federal court, "parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. "This provision authorizes only two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself." *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) (citation and internal quotation marks omitted).  The same rule applies when a non-attorney "attempts to bring suit on behalf of adults who are not competent to handle their own affairs." *Id.* at 133. "The fact that an incompetent person must be represented by a next friend or guardian ad litem thus does not alter the general rule that a non-lawyer may not represent another individual in federal court." *Teitelbaum v. Katz*, No. 12-CV-2858, 2013 WL 12623425, at *1 (S.D.N.Y. Apr. 2, 2013); *see also McQueen v. Tomins*, No. 24-CV-8596, 2025 WL 2074214, at *2 (E.D.N.Y.

July 23, 2025) ("[A] non-attorney guardian may only appear in court papers or proceedings through an attorney."). Accordingly, Plaintiff is not likely to demonstrate that he can bring the asserted claims on behalf of his mother.

Relatedly, the Court lacks the authority to grant—and private individuals lack standing to seek—various types of relief sought in Plaintiff's filings. A Plaintiff has standing only where her injury is "redressable by a favorable ruling," among other core requirements. *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "To determine whether an injury is redressable," the Court "consider[s] the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quotation marks and citation omitted). Here, much of the relief sought would involve the Court ordering or coordinating criminal proceedings and/or regulatory action against Defendant TD Bank.

Neither a private individual nor the Court, *sua sponte*, has the authority to initiate a prosecution of an individual. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) ("[T]he decision to prosecute is solely within the discretion of the prosecutor.").[9] Moreover, "violations of the Criminal Code may not serve as

---

[9] Multiple courts have held that the CFPB's decision to open an investigation or commence enforcement proceedings is discretionary, and that there is no private right of action under the CFPA. *See Fedorova v. Foley*, No. 22-CV-991, 2023 WL 3484425, at *3 (W.D. Mich. May 16, 2023) ("[T]he CFPB's decision to conduct an investigation or to institute enforcement proceedings is not a discrete agency action that it is required to take, rather it is discretionary."); *Oparaji v. ABN AMRO Mortg. Grp., Inc.*, No. 19-CV-01650, 2020 WL 9816011, at *16 (E.D.N.Y. Sept. 18, 2020) ("Plaintiff provides no statutory basis, and the Court can find none, for finding a private right of action under these provisions of the statute, which outline duties, authorities, and enforcement powers of the Consumer Financial Protection Bureau."); *Shipkovitz v. Dovenmuehle Mortg., Inc.*, No. 16-CV-0712, 2016 WL 6803771, at *4 (D. Md. Nov. 17, 2016) ("[T]he CFPB's investigatory responsibilities are discretionary."); *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) ("Plaintiffs

the basis for a civil cause of action unless the statute includes an express or implied private right

of action." *Sun-Ming Sheu v. Centex Home Equity*, No. 06-CV-2235, 2006 WL 8452032, at *2

(E.D.N.Y. Sept. 16, 2006).  Many of the criminal statutes underlying Plaintiff's stated causes of

action do not have a private right of action.  *See, e.g.*, *Lee v. Saul*, No. 19-CV-06553, 2022 WL

1051216, at *12 (S.D.N.Y. Feb. 10, 2022) ("There is not, however, a private right of action for

violations of the criminal statutes regarding obstruction of justice." (collecting cases)); *Plummer*

*v. Cnty. of Los Angeles*, No. 20-CV-04568, 2021 WL 4341122, at *9 (C.D. Cal. Aug. 12, 2021)

("To the extent Plaintiff is referencing the Elder Abuse and Extortion Act or the Elder Justice

Act of 2009, not only would this claim be raised on his mother's behalf, but no private right of

action was created by either statute."), *report and recommendation adopted*, No. 20-CV-4568,

2021 WL 4338908 (C.D. Cal. Sept. 22, 2021); *Roy v. Bank of New York Mellon*, No. 17-CV-

6729, 2018 WL 3912281, at *6 n.12 (E.D.N.Y. Aug. 14, 2018) ("The Court also notes that

plaintiffs' claims for mail fraud, wire fraud, and money laundering are subject to dismissal

because there is no private right of action under these criminal statutes." (collecting cases)),

*report and recommendation adopted*, No. 17-CV-6729, 2018 WL 4771898 (E.D.N.Y. Sept. 30,

2018); *see also Kashelkar v. Bluestone*, 306 F. App'x 690, 692 (2d Cir. 2009) (summary order)

(noting that 18 U.S.C. § 1341 does not create a private right of action).[10]

---

provide no statutory basis, and the Court can find none, for finding a private right of action under
these provisions of the statute, which outline duties, authorities and enforcement powers of the
CFPB."). The Court therefore concludes that Plaintiff's requests that a CFPB enforcement action
be commenced are likewise unlikely to succeed.

[10] There does exist a private right of action under RICO.  *See* 18 U.S.C. § 1964(c)
(establishing private right of action).  However, the Court determines that Plaintiff has not
demonstrated a likelihood of success as to his RICO claim.  His allegations as to both the
existence of an enterprise and a pattern of racketeering activities are conclusory and unclear.  *See*
*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173–175, 178–182 (2d Cir. 2004)
(describing the enterprise and pattern requirements); *Black v. Ganieva*, 619 F. Supp. 3d 309,

Because the issues described above cast serious doubts on Plaintiff's standing to pursue these claims, and because standing is a constitutional requirement, the Court does not address further Plaintiff's likelihood of success on the merits.[11]

### III.  Conclusion

For the reasons set forth above, Plaintiff's motions are denied.  The Clerk of the Court is respectfully directed to terminate the motions pending at Dkt. No. 14 and Dkt. No. 24, and to send a copy of this Order to Plaintiff.

SO ORDERED.

Dated:    December 10, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

330–37 (S.D.N.Y. 2022) (dismissing RICO claims in part due to failure to allege enterprise requirements of common purpose and relationship among enterprise participants), *aff'd,* No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) (summary order); *Nelson v. Publishers Circulation Fulfillment, Inc.*, No. 11-CIV-1182, 2012 WL 760335 (S.D.N.Y. Mar. 7, 2012) ("[Plaintiff's] complaint fails to sufficiently plead any predicate acts of racketeering. Therefore, [plaintiff's] RICO claim is dismissed for failure to plead a pattern of racketeering.").

[11] The relief Plaintiff requests as to Derek Killam and Kevin Taylor must be denied for the additional reason that it is unclear whether these individuals were properly served with the Motion papers.  "Any motion made in writing, other than ex parte motions, must be served on the other party . . . ." *Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*, 422 F.3d 72, 75–76 (2d Cir. 2005) (citing Fed. R. Civ. P. 5(a), (d)).  The party filing a Motion "must file a certificate of service with its electronic filing" if "the persons to be served have not consented to receive electronic notifications of filings."  *Yanes v. Juan & Jon Inc.*, No. 19-CV-201, 2023 WL 5152510, at *4 (E.D.N.Y. May 12, 2023).

Killam and Taylor have not appeared in the Action and therefore have not consented to receive electronic case filings. (*See* Dkt.)  Although Plaintiff's Motion represents that it was served on all parties of record and includes a sparse "certificate of service," the certificate does not specify the method of service and the Court is, as a result, unable to discern whether service was proper.  (*See* Pl.'s Mot. at 3.)  This issue constitutes a separate basis to deny the Motion.  *Yanes*, 2023 WL 5152510, at *6 (denying summary judgment on the same basis and collecting cases); *Winter v. Pinkins*, No. 14-CV-8817, 2017 WL 11768006, at *1 (S.D.N.Y. Oct. 20, 2017) (concluding magistrate judge correctly denied motion where "it was not clear to [the magistrate judge] that [d]efendant had served [p]laintiff with a copy of her motion").