UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID K. WILLIAMS, *as Estate Representative of Gus Williams and Guardian for Rosanna Williams*,

*Plaintiff*,

v.

TD BANK, N.A., *et al.*,

*Defendants*.

No. 25-CV-6753 (KMK)

OPINION & ORDER

Appearances:

David K. Williams
Mount Vernon, NY,
*Pro se Plaintiff*

Nelson Matthew Stewart, Esq.
Duane Morris LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

David K. Williams ("Plaintiff") brings this Action, assertedly on behalf of the estate of Gus Williams and as guardian of Rosanna Williams, against T.D. Bank, N.A. (the "Bank"), Kevin Taylor ("Taylor"), and Derek Killam ("Killam") (collectively, "Defendants"), seeking $1,000,000,000 in monetary damages, treble damages, injunctive relief, reimbursement of litigation expenses, and other relief. (Compl. 1, 14 (Dkt. No. 1).)[1] Before the Court is Defendant

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

TD Bank's Motion to Dismiss (the "Motion"). (*See* Mot. to Dismiss ("Mot.") (Dkt. No. 61).)[2] For the reasons explained herein, the Motion to Dismiss is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint and the other materials properly considered on a Motion to Dismiss. As Plaintiff is proceeding pro se, the Court considers facts contained in other documents before the Court to the extent that they are not inconsistent with the allegations in Plaintiff's Complaint. *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022) (noting that the court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum," to the extent that these materials are consistent with the allegations in the complaint); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum). The facts taken from the Complaint are taken as true for the purposes of resolving the instant

[2] Despite not having appeared and, it seems, not having been served in this Action, Defendants Killam and Taylor appear to have joined in TD Bank's arguments (or at least, TD Bank's counsel represents as much in the Memorandum of Law in Support of the Motion to Dismiss). (*See* Mem. of Law in Supp. re: Mot. to Dismiss ("Def.'s Mem.") 7 n.1 (Dkt. No. 63).) Regardless of the propriety of TD Bank's counsel making such a representation, the reasoning set forth below applies equally to the claims asserted against Defendants Killam and Taylor, and may be raised by the Court *sua sponte* because the Court has an affirmative duty to determine that it has jurisdiction, as well as a duty to ensure that the interests of third-parties are adequately protected. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("[W]e consider whether all parties before the court are properly represented even in cases where the parties themselves do not raise the issue."); *Lotes Co. v. Hon Hai Precision Indus. Co.*, No. 12-CV-7465, 2013 WL 2099227, at *4 (S.D.N.Y. May 14, 2013) ("A federal court has an independent duty to determine that it has subject matter jurisdiction and may raise the issue sua sponte."), *aff'd on other grounds*, 753 F.3d 395 (2d Cir. 2014).

Motion.[3] *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 246 (2d Cir. 2024). In this account, the Court does not include Plaintiff's allegations that amount to no more than conclusions of law. *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021); *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 219 (S.D.N.Y. 2022) ("Even in the pro se context, the Court is not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" (italics omitted) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

Plaintiff's Complaint pertains to a safe deposit box at the Bank. (Compl. 6–7.) Plaintiff's brother, now deceased, and Plaintiff's now-centenarian mother both had authority over the safe deposit box and its contents, apparently as co-lessees. (*See generally* Compl.) The Bank drilled the safety deposit box and emptied it of its contents—including NBA Championship rings from the 1979 Seattle SuperSonics, for which team Gus Williams played, personal memorabilia from Gus Williams's NBA career, "burial papers" belonging to Rosanna Williams, and other valuable items—on January 29, 2020. (Compl. 4, 6, 10; Mot. for Summ. J. ("MSJ") 2, 9 (Dkt. No. 4); Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n") 8 (Dkt. No. 66).)[4] The box's contents were then sold at auction for approximately $1,500–$2,000—significantly less than their actual value. (Compl. 6, 10; MSJ 9.)

---

[3] Accordingly, the Court disregards Defendant's attempts to challenge the veracity of Plaintiff's allegations. (*See, e.g.*, Def.'s Mem. 7 (describing the Complaint's allegations as "fantastical and spurious").)

[4] As Plaintiff proceeds pro se, the Court is under an obligation to construe his pleadings generously to raise the strongest arguments they suggest. *See Gawlik v. Reis*, No. 23-CV-1194, 2025 WL 744270, at *6 (D. Conn. Mar. 7, 2025) ("[I]t is well-settled that pleadings of self-represented litigants must be construed generously." (citation omitted)). Accordingly, here and throughout this Opinion, the Court considers the "allegations contained in [Plaintiff's] other court filings" to the extent relevant to his Motion. *Hinds v. Pathmark Stores, Inc.*, No. 04-CV-3722, 2005 WL 1606366, at *1 (E.D.N.Y. June 2, 2005) (citation and quotation marks omitted).

Plaintiff asserts that shortly thereafter, in 2021, he was appointed estate administrator for Gus Williams. (Compl. 2–3.) In a South Carolina case, he represents, he and Lisa Williams were qualified co-guardians, and given the "full authority to provide for the care, custody, supervision, health and medical needs" of Gus Williams. (*Id.*) He asserts that the court in that case further ordered "access to any of Gus Williams's financial account(s) and all of the property of Gus Williams . . . to the Conservators . . . ." (*Id.*) Plaintiff claims that he "could act as sole guardian with full authority" for his deceased brother pursuant to South Carolina law, and that this guardianship would not expire until his brother's death. (*Id.* at 4.) In support of his Opposition, Plaintiff attaches the relevant certificates of appointment from the South Carolina Probate Court. (Opp'n, Ex. 1, at 16–17 (Dkt. No. 66-1).) These Certificates explain that the "Co-Conservators" and "Co-Guardians" David K. Williams and Lisa Williams, would "have all the general powers and duties of a guardian provided under §62-5-312 S.C. Code of Laws, 1976, as amended, and granted to guardians generally under the laws of the State of South Carolina law [*sic*]." (*Id.* at 16–17 (capitalization altered).)

Plaintiff further alleges that he was appointed estate administrator for his brother's estate by a Court in Maryland. (Compl. 2.) He attaches Letters of Administration of a Small Estate on behalf of Gus Williams, specifying that Plaintiff was granted administration of the estate "to open [the] safe deposit box and remove [its] contents." (Opp'n, Ex. 1, at 4 (capitalization altered).) This document is dated May 29, 2025, long after the safety deposit box is alleged to have been drilled. (*Id.*)

Plaintiff also represents that he serves as "[g]uardian and [a]dvocate" for his centenarian mother, Rosanna Williams. (Compl. 2.) While he cites the same South Carolina proceedings in support of this proposition, (Opp'n 5–6), the copy of the order he appends to his filings pertains

exclusively to Gus Williams, and says nothing about Rosanna Williams, (Opp'n, Ex. 1, at 16–17).

In 2021, after his appointment as guardian, Plaintiff says that he brought the guardianship and conservatorship paperwork to TD Bank. (Pl.'s Opp'n to Defs.' Req. for Pre-Mot. Conference 2–3 (Dkt. No. 58).) There, he met with a manager who "accepted [his guardianship] paperwork and promised [him] access" to the safe deposit box. (*Id.* at 3.) He alleges that, once the Bank had the paperwork, TD Bank's upper management "realized they had committed a crime in 2020" in light of their drilling "while [Plaintiff] had court-ordered authority." (*Id.*) He continued to seek access to the safe deposit box and its contents but, from 2021 to 2025, four separate managers gave unsatisfactory responses to his inquiries. (*Id.*) At some point during these years, Plaintiff interacted with a TD Bank employee named Kevin Taylor who, he says, did not respond to repeated settlement demands, and an employee named Derek Killam, who he contends was engaged in criminal activity related to his mother and brother's property. (Compl. 5, 9.)

According to Plaintiff, Gus Williams died on January 15, 2025, as the result of "[i]nadequate medical care" following a stroke. (*Id.* at 2, 10–11; Opp'n 4.) Gus Williams could not "afford proper treatment" because he lacked adequate funds. (Compl. 10; Opp'n 64.) Plaintiff asserts that his brother lacked these funds due to the Bank's decision to empty the safe deposit box; in his view, if his family had been able to access the materials stored therein, they would have been able to sell those items (and specifically the Seattle SuperSonics championship rings) to pay for superior medical care for his brother. (Compl. 10; Opp'n 64.) Plaintiff further alleges that Rosanna Williams "needs [the] burial papers" that were stored at the Bank. (Compl. 10 (emphasis omitted).) It appears Plaintiff also attempted to access his brother's accounts at TD

Bank, and was told by Bank employees that he could not access the joint account. (*Id.* at 6.) The loss of Plaintiff's brother was understandably devastating for him, and he is immensely distressed by his mother's loss of her burial papers, which apparently outlined her funeral arrangements. (Opp'n 64–65.)

Plaintiff represents that he sent a settlement demand dated July 9, 2025 to the Bank. (MSJ 8.) He then followed up with further demands for settlement. (*See id.* at 8, 12.) Plaintiff emphasizes too that he has filed multiple complaints with federal and state agencies based on the above-described facts, and asks the Court to infer that his claims are legitimate from the agencies' investigating the complaints and purported additional misconduct by TD Bank. (Opp'n 3–4; Letter from Derek K. Williams to Court (Jan. 2, 2026) (Dkt. No. 67); Pl.'s Supp. Mem. (Dkt. No. 68); Letter from Derek K. Williams to Court (Jan. 23, 2026) (Dkt. No. 72).) In later correspondence, Plaintiff alleged that the Office of the Comptroller of the Currency was covering up TD Bank's wrongdoing. (Letter from David K. Williams to Court (Feb. 6, 2026) (Dkt. No. 76); Letter from David K. Williams to Court (Feb. 9, 2026) (Dkt. No. 77).)

B. Procedural Background

On August 15, 2025, Plaintiff commenced the instant Action. (*See* Compl.) The Complaint identifies eight causes of action under federal law: (1) RICO, 18 U.S.C. § 1961; (2) elder abuse under unspecified federal statutes; (3) obstruction of justice, 18 U.S.C. § 1512; (5) mail fraud, 18 U.S.C. § 1341; (6) money laundering, 18 U.S.C. § 1956; (7) unspecified bank law violations in Part 12 of the United States Code; and (8) unspecified consumer protection violations from Part 15 of the United States Code. (Compl. 13–14). The Complaint also identifies eight state law claims, including claims for negligence and wrongful death. (Compl. 14.) On August 29, 2025, without leave from this Court and without discovery having been

completed, Plaintiff filed a Motion for Summary Judgment. (MSJ.) On September 3, 2025, and again on September 8, 2025, Plaintiff filed a motion seeking emergency relief. (*See* Emergency Mot. for Expedited Relief (Dkt. No. 6); Emergency Mot. for Expedited Relief (Dkt. No. 8).) He filed additional materials, including a demand for "immediate FBI prosecution." (Dkt. No. 12; *see also* Dkt. No. 11 (purporting to amend earlier filings and offering additional materials in support of Plaintiff's requests for relief).)

The Court denied various of Plaintiff's Motions in a memorandum endorsement on September 10, 2025. (*See* Mem. Endorsement dated Sept. 11, 2025 (Dkt. No. 13).) As explained in that endorsement, Plaintiff had not served Defendants. (*Id.*) The Court told Plaintiff that he could renew his emergency relief request once service had been effectuated. (*Id.*) Plaintiff continued to file a flurry of additional motions, largely requesting emergency relief. (*See generally* Dkt.) He also filed what, he said, was proof of service. (Dkt. No. 17.) Eventually, Plaintiff successfully served the Bank on October 28, 2025. (Aff. of Service (Dkt. No. 49).) He continued to file additional documents requesting that Defendants settle his claims. (*See generally* Dkt.)

In an Opinion on December 10, 2025, the Court denied various of Plaintiff's requests for emergency relief, partially on the basis that Plaintiff most likely lacked standing to pursue the relief he requested, and partially on the basis that Plaintiff was improperly representing third parties *pro se*. *See generally Williams v. TD Bank, N.A.*, No. 25-CV-6753, 2025 WL 3538600 (S.D.N.Y. Dec. 10, 2025). The Court noted too that Derek Killam and Kevin Taylor did not seem to have been properly served with process or Plaintiff's papers. *Id.* at *7 n.11.

On December 18, 2025, Defendant TD Bank filed the instant Motion and a supporting memorandum. (*See* Mot.; Def.'s Mem.) As relevant here, Plaintiff filed his opposition on

December 30, 2025. (*See* Opp'n.) He then filed additional memoranda on January 2, 2025. (*See* Pl.'s Supp. Mem.; Cover Letter for Pl.'s Supp. Mem. (Dkt. No. 69).) On January 16, 2025, Plaintiff again sought emergency relief, (Letter from David K. Williams to Court (Jan. 16, 2025) (Dkt. No. 70)), which the Court denied on January 22, 2025 (Mem. Endorsement dated Jan. 22, 2026 (Dkt. No. 71)). He filed additional supporting materials throughout February of 2026. (*See generally* Dkt.) On February 10, 2026, the Bank filed its reply brief, (*see* Reply Mem. (Dkt. No. 78)), in response to which Plaintiff filed what are, in essence, two unauthorized sur-replies. (*See* Pl.'s Not. of Supp, Evidence (Dkt. No. 79); Not. of Supp. Public Records (Dkt. No. 80).) In the name of fairness to the *pro se* Plaintiff, the Court has considered the entirety of his filings in evaluating the Motion to Dismiss.

## II. Discussion

### A. Standard of Review

The Bank moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Def.'s Mem. 7.) "The standard of review for a motion to dismiss under Rule 12(b)(1) is substantively 'identical' to the standard for a Rule 12(b)(6) motion." *McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, No. 21-639, 2021 WL 5286647, at *1 (2d Cir. Nov. 15, 2021) (summary order) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999)). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonazalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quotation marks omitted). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof

on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also Gerasimov v. Amalgamated Hous. Corp.*, No. 21-CV-1760, 2021 WL 6338522, at *3 (S.D.N.Y. Dec. 17, 2021) ("The only difference between Rule 12(b)(1) and 12(b)(6) motions is the allocation of the burden of proof.").

1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it 'has the authority to adjudicate the cause pressed in the complaint.'" *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when a district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted); *see also McNeil*, 2021 WL 5286647, at *1 ("Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate' the claim, such as when Article III standing is not met." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))). "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *Rutherford*, 2019 WL 1437823, at *2 (citation and quotation marks omitted, alterations adopted).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and

plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57. Here, the Defendants raise a facial challenge to standing.

2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 95 (2d Cir. 2021) (per curiam) (citation omitted). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

B. Analysis

1. Standing

The Court set out the applicable standing framework in its earlier Opinion addressing Plaintiff's request for emergency relief. *See Williams*, 2025 WL 3538600, at *4–5. However, the Court offers a brief summary of its earlier explanation, as relevant here.

"Standing doctrines" counsel that a court should "refuse to determine the merits of" certain "legal claim[s], on the ground that even though [a] claim may be correct[,] the litigant advancing it is not properly situated to be entitled to its judicial determination." 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531 (3d ed. 2026) (footnote omitted). Among other of its various doctrinal complexities, standing encompasses the relatively simple idea "that one person cannot seek to recover on a claim that belongs to someone

else." *Id.* § 3531.9 (footnote omitted). "Standing is a constitutional requirement rooted in Article III of the United States Constitution," *Severino v. Rovella*, No. 22-CV-1529, 2024 WL 147997, at *3 (D. Conn. Jan. 12, 2024), one so important that the Supreme Court has described it as "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As federal courts are courts of limited jurisdiction with only the power established by the Constitution and acts of Congress, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996); *accord Severino*, 2024 WL 147997, at *4. It must therefore be "address[ed] . . . before taking up other grounds for dismissal." *Serverino*, 2024 WL 147997, at *4.

Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (second alteration in original) (quoting *Lujan*, 504 U.S. at 560–61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

As relevant here, there are "several narrow exceptions" to the general rule that a plaintiff has standing "only to 'assert his or her own legal rights and interests' and may not 'rest a claim to relief on the legal rights or interests' of others." *Doe v. Hochul*, 139 F.4th 165, 177 (2d Cir. 2025) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). For instance, "courts have . . . the authority to appoint a 'next friend' who may bring claims on behalf of a minor or other

incompetent person" out of recognition that "the only way to vindicate the[] rights [of these parties] is to permit another to prosecute their claims in a representative capacity." *Id.* at 177. In the ordinary course, this is a duty taken on by "the minor or incompetent party's legal guardian." Accordingly, Federal Rule of Civil Procedure 17 states that "a general guardian" "may sue or defend on behalf of a minor or an incompetent person." Fed. R. Civ. P. 17(c)(1). So too, Rule 17 provides that "an executor," "an administrator," or "a guardian," *inter alios*, may "sue in their own names without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a)(1).

In the event that a guardian or representative is unable, unwilling, or has interests conflicting with those of the minor or incompetent person, a district court may appoint a "next friend" to bring the party's claims. *Doe*, 139 F.4th at 177. Pursuant to Federal Rule of Civil Procedure 17(c):

> The following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary . . . . A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.

Fed. R. Civ. P. 17(c). The next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action" and "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Doe*, 139 F.4th at 177 (quotation marks and citation omitted).

In the Second Circuit, a court is required only to "consider the good faith of those claiming to speak for the infant [or incompetent person] and satisfy itself that the 'next friend' is motivated by a sincere desire to seek justice on the infant's [or incompetent person's] behalf." *Ad Hoc Comm. of Concerned Tchrs. ex rel. Minor & Under-Age Students Attending Greenburgh*

*Eleven Union Free Sch. Dist. v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 30–31 (2d Cir. 1989); *see also* 6A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Fed. Prac. & Proc. § 1572 (3d ed. 2026) ("There are no special requirements for the person suing as next friend."); *accord Roberts v. LifeMD Atl. Patient Med. Care, P.C.*, No. 24-CV-8162, 2026 WL 392434, at *6 (S.D.N.Y. Feb. 12, 2026) (explaining relevant standard), *objections overruled sub nom. Roberts by & through Roberts v. LifeMd Atl. Patient Med. Care, P.C.*, 2026 WL 1180087 (S.D.N.Y. Apr. 30, 2026). "An individual would be an unsuitable next friend if he or she is likely to be a fact witness who would testify adversely to the incompetent person or is someone who has or appears to have a conflict of interest with the incompetent person." *Roberts*, 2026 WL 392434, at *6.

2. Plaintiff Lacks Standing to Assert Certain of the Claims Raised Here

The Court concludes that the lion's share of the causes of action alleged in the Complaint must be dismissed for lack of standing. Read charitably, Plaintiff's Complaint and Opposition brief assert a number of criminal claims and request relief from various government agencies. (*See* Compl. 13–14; Opp'n 11–15 (requesting "FBI IC3 case number confirmation" and "NY AG case number confirmation").) As the Court has already explained:

> [T]he Court lacks the authority to grant—and private individuals lack standing to seek—various types of relief sought in Plaintiff's filings. A Plaintiff has standing only where her injury is "redressable by a favorable ruling," among other core requirements. *Murthy* [*v. Missouri*, 603 U.S. 43, 57 (2024)] (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "To determine whether an injury is redressable," the Court "consider[s] the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quotation marks and citation omitted). Here, much of the relief sought would involve the Court ordering or coordinating criminal proceedings and/or regulatory action against Defendant TD Bank.
>
> Neither a private individual nor the Court, sua sponte, has the authority to initiate a prosecution of an individual. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or

> nonprosecution of another."); *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) ("[T]he decision to prosecute is solely within the discretion of the prosecutor."). Moreover, "violations of the Criminal Code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action." *Sun-Ming Sheu v. Centex Home Equity*, No. 06-CV-2235, 2006 WL 8452032, at *2 (E.D.N.Y. Sept. 16, 2006). Many of the criminal statutes underlying Plaintiff's stated causes of action do not have a private right of action. *See, e.g.*, *Lee v. Saul*, No. 19-CV-06553, 2022 WL 1051216, at *12 (S.D.N.Y. Feb. 10, 2022) ("There is not, however, a private right of action for violations of the criminal statutes regarding obstruction of justice." (collecting cases)); *Plummer v. County of Los Angeles*, No. 20-CV-04568, 2021 WL 4341122, at *9 (C.D. Cal. Aug. 12, 2021) ("To the extent Plaintiff is referencing the Elder Abuse and Extortion Act or the Elder Justice Act of 2009, not only would this claim be raised on his mother's behalf, but no private right of action was created by either statute."), *report and recommendation adopted*, No. 20-CV-4568, 2021 WL 4338908 (C.D. Cal. Sept. 22, 2021); *Roy v. Bank of New York Mellon*, No. 17-CV-6729, 2018 WL 3912281, at *6 n.12 (E.D.N.Y. Aug. 14, 2018) ("The Court also notes that plaintiffs' claims for mail fraud, wire fraud, and money laundering are subject to dismissal because there is no private right of action under these criminal statutes." (collecting cases)), *report and recommendation adopted*, No. 17-CV-6729, 2018 WL 4771898 (E.D.N.Y. Sept. 30, 2018); *see also Kashelkar v. Bluestone*, 306 F. App'x 690, 692 (2d Cir. 2009) (summary order) (noting that 18 U.S.C. § 1341 does not create a private right of action).

*Williams*, 2025 WL 3538600, at *5–6 (footnotes omitted). Without clear "rights-creating language needed to imply a private right of action," there is no right stemming from these statutes that Plaintiff could enforce. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 331 (2015); *see also Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 376 (2025) (explaining a plaintiff must demonstrate language that clearly and unambiguously bestows an individual federal right). Accordingly, the Court again determines that Plaintiff lacks standing to seek the various criminal referrals and prosecution requests that he asserts. *See Sterling v. Admin. for Child. Servs.*, No. 24-CV-5936, 2025 WL 844418, at *6 (S.D.N.Y. Mar. 13, 2025) ("By citing federal criminal statutes, [the p]laintiff seems to seek the federal criminal prosecution of the defendants and/or others. If that is the case, the [c]ourt must dismiss the claims seeking such relief."); *McNeil v. Aguilos*, 831 F. Supp. 1079, 1087 (S.D.N.Y. 1993) (holding that where

"[a] statute confers no private right of action, . . . [the] plaintiff lacks standing to prosecute on her own behalf").[5]

In its Opinion denying Plaintiff's request for a preliminary injunction, the Court took the view that "based on the allegations in [the] . . . Complaint, Plaintiff's guardianship authority," regardless of the nature of that guardianship, which Plaintiff has not adequately alleged, "expired after his brother's death." *Williams*, 2025 WL 3538600, at *5. Plaintiff has now produced letters of administration of a small estate from Maryland, which by its own terms empowers Plaintiff "to open [the] safe deposit box and remove [its] contents." (*See* Opp'n, Ex. 1 at 4 (capitalization adjusted).) The documents also purport to appoint Plaintiff personal administrator of Gus Williams's estate, though it is somewhat unclear if this appointment is limited by the language relating to the opening of the safe deposit box. (*Id.*) In any event, such appointment would, under Maryland law, allow Plaintiff to "step[] into [the deceased's] shoes in order to 'prosecute actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might

---

[5] To the extent that Plaintiff is attempting to assert a civil RICO claim on his own behalf, (*see* Opp'n 52–55), he has not alleged that the asserted scheme targeted him, and therefore lacks standing to assert the claim on his own behalf. *Azima v. Dechert LLP*, No. 22-CV-8728, 2024 WL 4665106, at *37 (S.D.N.Y. Sept. 26, 2024) (noting that "the plaintiff could not establish standing under RICO where the fraudulent scheme alleged targeted another victim"). And as explained further in Sections II.B.3 and II.B.4, *infra*, he cannot raise these claims on behalf of his mother or his late brother.

Relatedly, to the extent that Plaintiff seeks to raise a negligence claim on his own behalf, he identifies no duty owed to *him* as opposed to his mother or late brother. "It is axiomatic that there can be no claim for negligence in the absence of a duty of care, running to the injured party." *Kennedy-McInnis v. Biomedical Tissue Servs., Ltd.*, 178 F. Supp. 3d 97, 102 (W.D.N.Y. 2016) (citing *Kimmell v. Schaefer*, 675 N.E.2d 450, 453 (N.Y. 1996)); *see also Kazanoff v. United States*, 945 F.2d 32, 36 (2d Cir. 1991) ("An action to recover for negligence does not lie unless there exists a duty on the part of the defendant and a corresponding right in the plaintiff." (wholly quoting *Donohue v. Copiague Union Free School Dist.,* 407 N.Y.S.2d 874, 877 (App. Div. 1978)).

have commenced or prosecuted.'" *Tratner ex rel. Lazer v. Nat'l W. Life Ins. Co.*, No. 24-CV-151, 2026 WL 1847216, at *5 (D. Md. June 26, 2026) (quoting Md. Code Ann., Est. & Trs. § 7–401(y)(1)) (alteration adopted).

If the language regarding opening the safe deposit box limits Plaintiff's authority, then he is not authorized to sue on behalf of Gus Williams's estate, and Plaintiff lacks standing to bring a claim on behalf of Gus Williams's estate. *See Krick v. Raytheon Co.*, 822 F. Supp. 3d 306, 317 (E.D.N.Y. 2026) ("The defendants also submitted documents from the courts in which the estates were probated, which show that except for [one of the plaintiffs], the other representative plaintiffs are not court-appointed personal representatives. Thus, these plaintiffs do not have standing to bring claims on behalf of their relatives' estates." (citation and footnote omitted)); *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 22-CV-3571, 2024 WL 246139, at *6 (S.D.N.Y. Jan. 23, 2024) (holding that the plaintiff lacked standing where she failed to "plead that the Probate Court appointed [her] to serve as the executor, administrator, or personal representative of [the] estate, or that she received any letters of administration"), *aff'd sub nom. Hartke ex rel. Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 24-258, 2024 WL 4380315 (2d Cir. Oct. 3, 2024). If it does not, then, in any event, the very document upon which Plaintiff relies to suggest that he *has* authorization to sue reveals too that there are other interested Parties in the estate (namely, his mother Rosanna Williams) whose existence, as explained further in Section II.B.4, *infra*, prevents Plaintiff from proceeding to represent the estate pro se in this Court.

Moreover, once again, Plaintiff has not adequately explained how he would have standing to sue on behalf of his mother, Rosanna Williams. To the extent that Plaintiff cites a South Carolina proceeding as the source of this authority, (Opp'n 5–6), the papers he attaches to

his opposition brief are wholly inconsistent with this position, and suggest only that "David K. Williams and Lisa Williams are the duly qualified Co-Conservators" of Gus Williams's estate and "Co-Guardians." (Opp'n, Ex. 1, at 16–17 (capitalization altered and emphasis omitted)). The Court need not credit this allegation where Plaintiff himself has relied on a document to frame his Complaint (thereby incorporating it by reference), voluntarily placed a copy before the Court, and the document affirmatively and unambiguously contradicts his pleadings. *See Sanchez v. County of Niagara*, No. 24-CV-378, 2025 WL 1127755, at *1 (W.D.N.Y. Mar. 31, 2025) ("[I]f an unsupported factual allegation in a pleading is affirmatively and unambiguously contradicted by documents attached to or necessarily implicated by the pleadings, the latter controls over the former." (quotation marks and citations omitted)), *report and recommendation adopted*, 2025 WL 1125388 (W.D.N.Y. Apr. 15, 2025); *Batson v. RIM San Antonio Acquisition, LLC*, No. 15-CV-07576, 2018 WL 1581675, at *5 (S.D.N.Y. Mar. 27, 2018) ("Where . . . documents [attached to a complaint] contradict the allegations in a complaint, the court need not accept those conclusory allegations as true."); *Ariel (UK) Ltd. v. Reuters Grp. PLC*, No. 05-CV-9646, 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006) ("[W]here allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the court is not obliged to credit the allegations in the complaint."), *aff'd*, 277 F. App'x 43 (2d Cir. 2008) (summary order).

In an extremely late-breaking submission filed only in response to Defendants' Reply Brief, Plaintiff attaches for the first time the New York State Court decision cited in his earlier filings as a source of authority for his guardianship over Rosanna Williams. (Pl.'s Not. of Supp. Evidence 37–43.) *Williams*, 2025 WL 3538600, at *2 n.5. He claims that this document shows

that he was appointed a guardian for Rosanna Williams. (Pl.'s Not. of Supp. Evidence at 11.)[6] It does not: rather, it shows that the New York State court "appoint[ed] Family Service Society of Yonkers . . . as Guardian of the Property of Rosanna Williams." (*Id.* at 40–41.) This document, too, suggests not only that Plaintiff lacks authorization to assert claims on behalf of his mother, but that another entity, Family Service Society of Yonkers, was granted the authority to manage Rosanna Williams's "income and assets," "[o]pen the safe deposit box," "determine an appropriate course of action for the items [contained] in the safe deposit box," "**[r]etain an attorney**," and have "[l]egal capacity to sue on behalf of [Rosanna Williams] . . . includ[ing] the authority to hire counsel, to prosecute and to defend civil proceedings." (*Id.* at 41–42 (emphasis added).) In other words, at least at the time of this decision, another entity was granted precisely the authority that Plaintiff purports to exercise here, and for "an indefinite term." (*Id.* at 42.) Accordingly, the Court determines that Plaintiff has not plausibly alleged or identified a legal basis for **his** bringing claims on behalf of his mother, Rosanna Williams.

Read liberally, Plaintiff might seek to be appointed next friend for his mother and for Gus Williams's estate to pursue claims based on the allegedly unlawful expropriation of Rosanna Williams's and Gus Williams's property or harms they experienced due to the Safe Deposit Box's being drilled. (*See generally* Pl.'s Not. of Supp. Evidence.) Indeed, Plaintiff urges that he must be able to pursue claims on behalf of his mother because she is incapacitated and unable to attend to her own needs, a conclusion that the Court readily understands given that Plaintiff claims his mother is 100 years old. (*Id.* at 6–8.) But even assuming that it would be proper to

---

[6] While this portion of Plaintiff's filing is paginated, the Court cites his "Notice of Supplemental Evidence" by reference to the ECF-stamped page numbers at the top-right corner of each electronically filed page.

appoint Plaintiff next friend to pursue these claims (or even possible, given that it seems another guardian has been appointed for Rosanna Williams), Plaintiff would not be entitled to prosecute these causes of action pro se, as explained further below.

3. Pro Se Status

The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing [herself].'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)); *see also Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) (substantially same). "A nonlawyer cannot bring suit on behalf of another person." *Sterling*, 2025 WL 844418, at *6 (citing, among other sources, *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)); *Odums v. Niblack*, No. 22-CV-7230, 2024 WL 4665268, at *3 (E.D.N.Y. Nov. 4, 2024) ("[The p]laintiff cannot represent [another individual] in this lawsuit, unless he is an attorney admitted to practice in this Court."); *Herman v. Town of Cortlandt, Inc.*, No. 18-CV-2440, 2023 WL 6795373, at *2 n.4 (S.D.N.Y. Oct. 13, 2023) ("As a nonattorney litigant appearing *pro se*, [the p]laintiff . . . cannot represent another person in this action." (quotation marks omitted)). Nor may "a nonlawyer beneficiary . . . assert claims on behalf of a deceased person's estate *pro se* when there are other beneficiaries or creditors of that estate." *Sterling*, 2025 WL 844418, at *6; *see also Guest v. Hansen*, 603 F.3d 15, 20–21 (2d Cir. 2010) ("Where there are other beneficiaries, 'an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors . . . will be affected by the outcome of the proceedings." (quoting *Iannaccone*, 142 F.3d at 559)). The Court must ensure that interests are represented adequately even if the "[P]arties do not raise the issue." *Colon v.*

*Comm'r of Soc. Sec.*, No. 19-CV-4319, 2022 WL 1137107, at *3-4 (E.D.N.Y. Apr. 18, 2022) (quotation marks and citation omitted).

As mentioned above, even assuming that Plaintiff could be appointed next friend of Gus Williams and Rosanna Williams, such that he could assert claims on behalf of their interests, he could not represent either of their interests pro se. *See Odums*, 2024 WL 4665268, at *3 ("Even if [the p]laintiff has a Power of Attorney to speak on his daughter's behalf in this matter, he may not do so in this Court [pro se]."); *Tomolonius v. Hanover Ins. Co.*, No. 25-CV-1694, 2025 WL 3896716, at *2 (D. Conn. Nov. 18, 2025) (report and recommendation) ("A person ordinarily may not appear pro se in the cause of another person or entity." (quotation marks and emphasis omitted)); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) (same). This principle necessitates the dismissal of the claims Plaintiff has asserted on behalf of his mother, Rosanna Williams. *Teitelbaum v. Katz*, No. 12-CV-2858, 2013 WL 12623425, at *1 (S.D.N.Y. Apr. 2, 2013) ("The fact that an incompetent person must be represented by a next friend or guardian ad litem thus does not alter the general rule that a non-lawyer may not represent another individual in federal court."); *see also McQueen v. Tomins*, No. 24-CV-8596, 2025 WL 2074214, at *2 (E.D.N.Y. July 23, 2025) ("[A] non-attorney guardian may only appear in court papers or proceedings through an attorney."). Without counsel, Plaintiff cannot litigate on his mother's behalf.

Although in some circumstances, as mentioned, an estate administrator or executor may proceed *pro se* on behalf of the estate, this can occur "only 'where the administrator of the estate is also its sole beneficiary *and* where the estate has no creditors.'" *Williams*, 2025 WL 3538600, at *6 (quoting *Purcell v. City of New York*, No. 18-CV-3979, 2018 WL 3733941, at *2

(E.D.N.Y. Aug. 6, 2018)).[7] "In order to litigate on behalf of his brother's estate, Plaintiff must present materials that would allow the Court to conclude that those circumstances are satisfied here." *Id.* Even with the benefit of the Court's explanation of the relevant doctrine in its Opinion denying his motion for emergency relief, *id*, Plaintiff has not done so, (*see generally* Opp'n).[8] Accordingly, any claims brought on behalf of his brother's estate must be dismissed without prejudice. *See Sterling*, 2025 WL 844418, at *7 ("[The p]laintiff alleges no facts as to whether, other than herself, there are beneficiaries or creditors associated with her deceased son's estate. In addition, [the p]laintiff alleges nothing to suggest that she has been appointed the estate's personal representative. Accordingly, once again, to the extent that [the p]laintiff asserts claims on behalf of her deceased son's estate, the [c]ourt dismisses these claims without prejudice."); *Watkins ex rel. Watkins v. Archdiocese of New York*, No. 19-CV-10217, 2019 WL 6312006, at *2 (S.D.N.Y. Nov. 25, 2019) (dismissing claims brought on behalf of the plaintiff's deceased brother where the plaintiff attempting to assert the claim was not an attorney); *Webb v.*

[7] Plaintiff admits that his mother is a listed beneficiary, but insists that her beneficiary status is of no moment because she cannot sue independently. (Pl.'s Not. of Supp. Evidence 6–7.) But "the fact that an incompetent person must be represented by a next friend or guardian ad litem thus does not alter the general rule that a non-lawyer may not represent another individual in federal court," and for good reason: this rule exists to ensure that the third party's interests are adequately protected from others whose interests may be in opposition to the third party, even if––as here—the Court has no basis from the face of the complaint to believe that the plaintiff and the third party are not likely aligned in their interests. *Teitelbaum*, 2013 WL 12623425, at *1.

[8] The materials Plaintiff submitted show that there were other individuals who received notice of the proceedings as to Gus Williams's estate and therefore may have been creditors or beneficiaries of the estate or expressly name another Rosanna Williams as a second interested person. (Def.'s Mem. 16; *see also* Opp'n, Ex. 1, at 4–5 (noting Rosanna Williams as a second interested person in Gus Williams's estate); *id.* at 16–17 (appointing Lisa Williams as co-conservator and co-guardian with Plaintiff).) Accordingly, although Plaintiff claims glancingly—relying on exhibits that are not attached to his opposition brief and do not appear to exist—that he is the sole beneficiary of the estate "with no creditors," (Opp'n 29–30), the documents upon which he relies directly contradict his allegations and the court need not credit them.

*Comm'r of Soc. Sec.*, No. 08-CV-82, 2009 WL 3719398, at *3 (N.D.N.Y. Nov. 4, 2009) (explaining, in case where a plaintiff sought to assert claims on behalf of his deceased stepbrother, that although "under section 1654 a party is permitted to appear *pro se,* that authority is limited to a party prosecuting or defending against claims in his or her own right and does not permit unlicensed persons to represent anyone else other than themselves" (quotation marks omitted and alterations adopted)).[9]

As the claims asserted in the Complaint on behalf of Plaintiff's brother and mother have deficiencies as to standing, which is a constitutional requirement, *Murthy v. Missouri*, 603 U.S. 43, 56 (2024) ("We begin—and end—with standing. . . . [Because the plaintiffs lack standing] [w]e . . . lack jurisdiction to reach the merits of the dispute."), and/or cannot be asserted by Plaintiff pro se out of fairness concerns for the interests of the third parties whose rights he seeks to assert, *see Guest*, 603 F.3d at 20, the Court will not reach Defendants' substantive arguments.

---

[9] This analysis applies equally to Plaintiff's asserted wrongful death claim. (*See* Opp'n 27–28.) An element of a wrongful death claim is "the appointment of a personal representative of the decedent." *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *23 (S.D.N.Y. Mar. 29, 2018) (quoting *Chong v. New York City Transit Auth*., 441 N.Y.S.2d 24, 25–26 (App. Div. 1981)). And the requirements that apply to appearances in federal court, set forth at 28 U.S.C. § 1654 and described above, apply equally to these claims. *Noel v. Am. Airlines*, No. 22-CV-1696, 2022 WL 1294396, at *3 (S.D.N.Y. Apr. 29, 2022). So a "[p]laintiff[] who is proceeding pro se[] may . . . assert claims on behalf of her [deceased relative's] estate [only] if: (1) she is the duly-appointed administrator or 'personal representative' of the estate; (2) she is the sole beneficiary of the estate; *and* (3) the estate has no creditors." *Id.* at *4. As described in note 8, *supra*, the materials Plaintiff has attached demonstrate that he is not the sole beneficiary of the estate.

To the extent that Plaintiff argues in his opposition brief that he has the standing to bring a wrongful death claim as an individual, rather than as a representative of his brother's estate, the very statute he cites, by its plain text, contradicts that assertion. *See* N.Y. Est. Powers & Trusts Law § 5-4.1(1) ("*The personal representative, duly appointed in this state or any other jurisdiction, of a decedent* who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." (emphasis added)).

It is enough to note that these procedural shortcomings doom Plaintiff's case here without the involvement of an attorney.

III. Conclusion

For the reasons set forth above, the Motion to Dismiss is granted. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 61 and to mail this Opinion to Plaintiff. In light of Plaintiff's pro se status, and because this is the first adjudication of his claims on the merits, the claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint, he must within 30 days of the date of this Order. The amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain all of the claims and factual allegations Plaintiffs wish the Court to consider. If Plaintiff fails to abide by the 30-day deadline, the claims that are dismissed could be dismissed with prejudice.

The opportunity to amend notwithstanding, the Court "strongly encourages Plaintiff to consult with a lawyer" even if he is later "able to show that []he has standing to bring a *pro se* . . . action as a personal representative" of his deceased brother. *Noel*, 2022 WL 1294396, at *4. Organizations such as Legal Services of the Hudson Valley, *see* https://lshv.org/ [https://perma.cc/NS4R-D8D9] (last visited July 21, 2026), provide free legal advice to self-represented plaintiffs and defendants in this court. A civil legal services organization may be able to assist Plaintiff in determining the options available to him.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge